Linck *v.* Linck.

(No. 53363—Decided March 3, 1972.)

Court of Common Pleas of Scioto County.

*Mr. Franklin T. Gerlach,* for plaintiff.
*Mr. Lawrence M. Kimble,* for defendant.

MARSHALL, J.   The plaintiff filed her petition on June 30, 1967, praying for alimony and that a decree of divorce rendered on March 24, 1970 in favor of the defendant herein by the Eighth Judicial Court of the state of Nevada in and for the county of Clark in case No. A74882, wherein the defendant here was plaintiff and the plaintiff here was defendant, be declared of no force and effect.   Subsequent to various proceedings, on November 15, 1971, the plaintiff filed an amended complaint praying for divorce and alimony and again that the Nevada decree be "set aside and declared of no force and effect."   Defendant asserts the validity of that decree and demands that the amended complaint be dismissed.

It was agreed that the court should first consider the effect of the Nevada decree upon this action. At the hearing the parties stipulated that a certified copy of that decree would be received into evidence, thereby waiving the requirements for proof of a judgment of a sister state under the "full faith and credit" clause of the Constitution of the United States as provided by federal statute.

The parties were married on September 24, 1937, and have no dependent children.   They have been separated since early 1968.   Previously, on April 14, 1969, the defendant had filed suit for divorce in this court in which action the plaintiff had cross petitioned for alimony alone. That case was dismissed by mutual agreement by entry filed January 19, 1970, after a property settlement had been made.

The law is clear: "A divorce decree obtained against a nonresident defendant solely upon service by publications, where such service is authorized in the state granting the divorce, is entitled under Section 1, Article IV of the Constitution of the United States to full faith and

credit elsewhere, providing such service meets the requirements of due process and the plaintiff at the time of instituting the divorce proceeding was legally domiciled in the state granting the divorce." *Armstrong* v. *Armstrong*, 162 Ohio St. 406; *Williams* v. *N. Carolina*, 317 U. S. 287. There is a presumption that the decree is valid. The United States Supreme Court further stated in the *Williams* case that "A person claiming that a Nevada court was without jurisdiction to render a divorce decree because plaintiff's domicile was in another state, has the burden of proving such claim"; and in the case of *In re Sayle*, 37 O. O. 167, the court held "Before an Ohio court will determine that a Nevada court did not have jurisdiction to grant a divorce, the person raising the question must sustain the burden of proof by clear and convincing evidence." The court in the *Williams* case further stated that the concept of domicile as a basis of jurisdiction to grant a divorce is governed by federal law. In determining the question of domicile, "the courts have applied the general rules as to acquisition and change of domicile, which require actual residence in the divorce jurisdictions, coupled with an intention to remain (*animus manendi*) and to abandon the former domicile (*animus non revertendi*)." 28 A. L. R. 2d 1303.

Plaintiff has not challenged the sufficiency of the service, and, therefore, the decisive question here to be determined is whether the defendant had acquired a bonafide domicile in Nevada. This nebulous issue which was created by the majority opinion, and "vigorously" protested by the minority, in the *Williams* case has caused much confusion and uncertainty throughout the country. This court has reviewed all of the reported cases in Ohio on the subject, including *Slapp* v. *Slapp*, 28 O. O. 47; *Davis* v. *Davis*, 80 Ohio Law Abs. 303; *Neal* v. *Neal*, 53 Ohio Law Abs. 329; *Rousculp* v. *Rousculp*, 17 Ohio App. 2d 101; *Smerda* v. *Smerda*, 35 O. O. 472; *In re Morrell*, 90 Ohio Law Abs. 369; *Desjardins* v. *Desjardins*, 22 O. O. 2d 98; *Schwartz* v. *Schwartz*, 17 O. O. 2d 267, and the *Sayle* and *Armstrong* cases, *supra*.

The general rule is stated: "It is a well established

principle of law that the mere fact that one leaves his domiciliary state and goes to another for the express purpose of procuring a divorce is not, in and of itself, grounds for another court to refuse to recognize the foreign divorce decree, so long as the person intended to make the foreign state his residence or domicile. The words residence and domicile are used synonymously. * * * On the other hand, if all the circumstances indicate that the applicant for divorce went to another state for the express purpose of securing a decree and not with the intention of remaining permanently, the jurisdiction of the court may be questioned." *In re Sayle, supra.*

The defendant in this case has been an employee of the Norfolk and Western Railway Company for nearly thirty (30) years. He left Portsmouth on January 1, 1970, and arrived in Las Vegas, Nevada, on January 6th. On the trip he was accompanied by Mrs. Hazel Popovich and her son. Prior to his departure defendant notified his employer he was taking sick leave; he stated that he was, and is, suffering from emphysema and hypertension. He stated that at the time he had twenty-seven and one-half years seniority with the company, and that by taking sick leave he could receive certain benefits, and would not lose the time off as a credit to retirement after thirty (30) years. He stated that for many years he had considered moving to Nevada and had visted there several times. He further testified that when he left Portsmouth, he intended to make Nevada his permanent home, if he could find employment. He said that he discussed transferring his church affiliation and his membership in the B. P. O. E. to Las Vegas, prior to his departure. While in Las Vegas, in response to a newspaper advertisement, he worked for two days in a clothing store on a trial basis, and he maintained an account in the First National Bank of Nevada. He further testified that he did not go there with the intent to secure a divorce, and did not contact an attorney until he had been there for about a week. These factors tend to evince that he possessed a domiciliary intent. There are other factors which tend to refute the existence of

such intent. He married Mrs. Popovich on March 29, 1970, and returned to Portsmouth on April 9, 1970. He states that his return was impelled by the necessity to provide personal care for his ailing mother, who died February 5, 1971.

This court is required to apply these facts to the law as above set forth, and make a determination as to the validity of the defendant's domicile in the state of Nevada. If we hold that it was invalid, the defendant and his present wife are legally married under the laws of Nevada, but he is a bigamist under the laws of Ohio and she is guilty of fornication. To hold that it was valid requires that we impart a degree of elasticity to the evidence. Yet, the sovereign and equal state of Nevada has already determined this issue, and in reliance upon that determination and by the sanction of the laws of that state, the defendant and his present wife are married.

It is regrettable that the courts must be confronted with such a dilemma. We should not cast more muck in the already murky waters. We find that the decree of the Eighth Judicial Court of the state of Nevada in case No. A74882 is entitled to full faith and credit.

Since the defendant has procured a divorce in Nevada, is the plaintiff precluded from obtaining alimony in this court? Defendant testified that he had not been faithful to the plaintiff, and there is an abundance of evidence to sustain plaintiff's petition on the grounds of gross neglect of duty and wilful absence, however, this court is of the opinion that the plaintiff is entitled to alimony solely by virtue of the fact that the defendant obtained the Nevada divorce. In the case of *Slapp* v. *Slapp, supra*, where the wife filed an action for alimony only in Ohio, and while it was pending, the husband obtained a Nevada divorce without personal jurisdiction of the wife, the Supreme Court of Ohio held that if the wife proved the grounds for divorce she could be awarded alimony. In the case of *Armstrong* v. *Armstrong, supra*, the Supreme Court held that "such a decree in favor of a husband, based solely on service by publication on the wife residing in another state, does not,

as to a denial of alimony therein, operate extra-territorially and is not entitled to full faith and credit in such other states. In the case of *Rousculp* v. *Rousculp, supra*, which, although the principle of comity rather than full faith and credit was involved, bears upon this issue, the court held, "Where a husband obtains a divorce from a court of a foreign nation which did not have personal jurisdiction of the wife, the Court of Common Pleas has jurisdiction to grant a divorce and alimony to the wife in an action for divorce under the provisions of R. C. 3105.01 (J), which provides that the court may grant a divorce where the party procures "a divorce without this state * * * by virtue of which the party who procured it is released from the obligations of marriage, while such obligations remain binding upon the other party." In that case, the husband had obtained a divorce in Germany in which the court did not have personal jurisdiction of the wife. The Court of Appeals affirmed the judgment of the Court of Common Pleas, which declared the German divorce valid and awarded custody of children, support and property division to the plaintiff. On page 128, the court stated with reference to R. C. 3105.01 (J): "It is a description of a divorce granted one spouse by a foreign state based on domicile or residence, but without obtaining personal jurisdiction of the other spouse. The change in the American constitutional concept of full faith and credit should not affect the application of the statute, either as applied to a divorce of a sister state or a foreign nation." (The change referred to occurred in the case of *Haddock* v. *Haddock*, 201 U. S. 562, in which the United States Supreme Court held that New York need not give recognition to a Connecticut decree based on residence and domicile of the husband, but without personal jurisdiction of the wife.) The Court of Appeals further stated, "A ground for divorce having been established, the court had the power under R. C. 3105.18, and other statutes, to grant relief in this case."

It is ordered that this matter be assigned for further hearing.

*Request for dismissal denied.*